# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

CYNTHIA WALLEN,                                :

                      Plaintiff,

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                      Defendant.        :

Case No. 3:07-cv-239

District Judge Thomas M. Rose
Chief Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).  Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988);  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole.  *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978);  *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984);  *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984).  However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.  *Garner, supra.*  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion.  *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous

employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for disability benefits under the Act in 1999. (Tr. 74). The Commissioner denied that application and Plaintiff returned to work. *See,* Tr. 56.

Plaintiff filed applications for SSD and SSI on July 23, 2003, alleging disability from July 1, 2000[1], due to anxiety, depression, migraines, epicondylitis, back and neck pain, irritable bowel, and bipolar disorder. (Tr. 52-54, 65, 431-34). Plaintiff's applications were denied initially and on reconsideration. (Tr. 28, 33, 436, 441). A hearing was held before Administrative Law Judge David Redmond, (Tr. 450-70), who determined that Plaintiff is not disabled. (Tr. 11-23). The Appeals Council denied Plaintiff's request for review, (Tr. 5-7), and Judge Redmond's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Redmond found that Plaintiff has severe degenerative disk disease of the cervical spine, degenerative joint disease of the cervical spine, osteoporosis, irritable bowel syndrome, asthma, plantar fasciitis, bilateral epicondylitis, and bipolar disorder, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 22, finding 3). Judge Redmond also found that Plaintiff has the residual functional capacity to perform a limited range of sedentary work. *Id.,* findings 4, 7. Judge Redmond then used section 201.28 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. *Id.,* finding 11; Tr. 23, finding 12. Judge Redmond concluded that

---

[1] Although Plaintiff alleged in her applications an onset date ot July 1, 2000, the record shows, and Plaintiff acknowledges, that she did not stop working until January 22, 2003. (Tr. 61; 65).

Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 23).

In her Statement of Errors, Plaintiff's challenges the Commissioner's decision only with respect to her alleged mental impairment.

Plaintiff was hospitalized July 20-21, 1998, after she was seen in the emergency room despondent and distraught over building stresses with problems with her boyfriend. (Tr. 262-64). At the time Plaintiff was admitted, it was noted that she had been increasingly using alcohol, feeling depressed, and feeling suicidal. *Id.* Plaintiff was discharged with the diagnoses of depressive disorder NOS and substance abuse, mixed–alcohol and pot. *Id.*

Since 1996, Plaintiff has intermittently received treatment at Mental Health Services of Clark County. (Tr. 341-411). In July, 1996, Plaintiff's diagnoses were adjustment disorder with depressed mood and rule out dependent personality. *Id.* In 1998, she received crisis intervention for depression and suicidal thoughts. *Id.* Plaintiff again received treatment at Mental Health Services in late1999 for depression. *Id.* At that time, Plaintiff attended two counseling sessions and her case was terminated because she did not appear for any follow-up appointments. *Id.*

In January, 2002, Plaintiff again sought counseling at Mental Health Services. (*Id.*; Tr. 115-18). At her initial session, Plaintiff complained of depression and difficulties coping. *Id.* On February 1, 2002, reported that her physician had prescribed Prozac and that she was doing better. *Id.* At that time, Plaintiff did not feel a need to continue with treatment. *Id.*

Examining psychologist Dr. Hrinko reported on September 17, 2003, that Plaintiff graduated from high school, attended college for 2 years, had no problems with basic activities of daily living, was cooperative, showed no signs of either exaggerating or minimizing her difficulties, seemed to be experiencing mild to moderate levels of stress given her unemployment, and reported

difficulties with attendance due to her migraine headaches which has impaired her ability to obtain stable employment. (Tr. 127-30). Dr. Hrinko opined that Plaintiff's diagnosis was generalized anxiety disorder. *Id.* Dr. Hrinko also opined that Plaintiff was able to deal with others without difficulty, showed no evidence of any problems that would interfere with her ability to understand and follow instructions, and that she was capable of maintaining employment although she acknowledge that stress and anxiety often intensify the frequency of her headaches. *Id.*

Dr. Goodson has been Plaintiff's treating physician since at least April 23, 2002. (Tr. 164-89). In February, 2004, Dr. Goodson reported that Plaintiff's psychological findings were anxiety/depression, insecure person, bipolar depression, and menopause. *Id.* Dr. Goodson also reported that Plaintiff was not significantly to moderately to markedly limited in her abilities with respect to mental-related work activities and that she was unemployable. *Id.*

Plaintiff returned to Mental Health Services for Clark County in February, 2004. *See* Tr. 341-411. At the time of her initial assessment, it was noted that Plaintiff's behavior evidenced some retardation, her speech was slow, she was oriented, had a constricted affect, and that her judgment was limited. *Id.* Plaintiff's diagnosis was identified as bipolar disorder NOS. *Id.* In August, 2004, Plaintiff was alert and oriented, had a somewhat bland affect although she showed an affective range in expression, and that she seemed to be improving and was less depressed. *Id.* Plaintiff continued to receive counseling through at least March 17, 2006. *Id.*

In March, 2006, Dr. Goodson reported that he has treated Plaintiff for about 10 years, that her bipolar disorder and panic attacks were aggravating or exaggerating her complaints of chronic pain, that she had difficulty concentrating and following through, poor concentration, and that she was not able to sustain attention and concentration to meet normal standards of work

6

productivity. (Tr. 416-21). Dr. Goodson also reported that Plaintiff was not able to demonstrate reliability, maintain concentration and attention for extended periods of approximately 2 hours, and that she was unable to complete a normal workday and workweek without interruption or perform at a consistent pace without unreasonable numbers and lengths of rest periods. *Id.*

Psychiatrist Dr. Smith of the Mental Health Services for Clark County reported on March 28, 2006, that Plaintiff had been a patient at Mental Health Services since September 22, 1999, he had last seen her on March 27, 2006, her diagnoses were bipolar disorder, alcohol and cocaine dependence in remission for 2 years, and panic attacks with mild agoraphobia, and that her current GAF was 50. (Tr. 422-30). Dr. Smith also reported that due to her multiple issues, Plaintiff had difficulty coping with stress, anxiety, and depression and that she was not able to perform many work-related mental activities. *Id.*

In her Statement of Errors, Plaintiff alleges that the Commissioner erred by rejecting Dr. Smith's opinion and for failing to give good reasons for rejecting that opinion. (Doc. 6).

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original)

7

(quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

Even though an ALJ is not bound by a treating physician's opinion, he must set forth his reasons for rejecting the opinion. *See Bowen v. Commissioner of Social Security,* 478 F.3d 742 (6th Cir. 2007); *see also, Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

In rejecting Dr. Smith's opinion, Judge Redmond essentially noted that it was not supported by the evidence of record. (Tr. 20). Specifically, Judge Redmond determined that Plaintiff's mental health treatment was sporadic and that the treatment notes reflected multiple

missed appointments. *Id.* Judge Redmond's observations were not unreasonable.

First, the record shows that Plaintiff received treatment off and on during the period 1996 through at least 2004, many times attending only a few counseling sessions before stopping treatment. In addition, while Plaintiff's mental health treatment notes reveal that beginning in 2004, Plaintiff received fairly regular treatment through about 2006, those notes also reflect that Plaintiff did not attend counseling for the period March through October, 2005. *See,* Tr. 358. Additionally, the treatment notes reveal that Plaintiff either did not show for counseling sessions or cancelled them on several occasions. *See,* Tr. 388 (February 1, 8, 2002), 379 (February 24, 2004), 378 (March 12, 2004), 369 (November 4, 30, December 16, 2004), 366 (January 18, February 3, 16, 2005), (365 (March 3, 28, April 4, 2005), 363 (May 5, 2005), 358 (November 21, 2005), 345 (February 2, 16, 2006). Under these facts, and contrary to Plaintiff's argument, this Court cannot say that Judge Redmond erred by describing Plaintiff's mental health treatment was sporadic.

In addition, Dr. Smith's opinion is inconsistent with the treatment notes which Plaintiff's counselors provided. For example, although Dr. Smith opined that Plaintiff's anxiety limited her ability to cope with work pressures, the treatment notes indicate rare complaints of anxiety. Further, Dr. Smith seemed to base his opinion on factors outside his mental health area of expertise. *See, e.g.,* Tr. 425. Finally, Plaintiff's mental health treatment was conservative and treatment notes reveal that she responded well to medications.

Plaintiff also argues that Dr. Goodson's opinion supports Dr. Smith's conclusion that Plaintiff is essentially disabled. However, Dr. Goodson's opinion is inconsistent with his own clinical notes. Specifically, he documented that Plaintiff was doing better with medication, (Tr. 387), was "doing remarkably well", (Tr. 178), had "no problems [ ] with her bipolar disorder, (Tr.

178), and that she was "in good control". (Tr. 176).

Finally, Dr. Smith's opinion is inconsistent with Dr. Hrinko's opinion as well as the reviewing mental health experts' opinions. *See,* Tr. 135-50.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

March 24, 2008.

*s/ Michael R. Merz*
Chief United States Magistrate Judge

NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).